UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARIO PETRUNO,

                      Plaintiff,

v.                                        **23-CV-553-A**
                                              **DECISION AND ORDER**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                      Defendant.
_____

### I.    INTRODUCTION

The Plaintiff Mario Petruno, brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking judicial review of the Commissioner's determination denying Plaintiff Supplemental Security Income (SSI) under the Social Security Act. Plaintiff (Dkt. No. 6) and the Commissioner (Dkt. No. 8) have filed cross-motions for judgment on the pleadings. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

### A.  Factual Background and Procedural History

Plaintiff was born in 1976, and on May 1, 2020, he filed an application for SSI alleging disability beginning on May 1, 2018. His claim for disability was based on the following illnesses, injuries, and conditions: major depression; PTSD; sexual abuse victim; diabetes; COPD; high blood pressure; partial hearing loss in the left

ear; and obesity (Dkt. No. 5, p. 63). Because the medical evidence provided by the Plaintiff was insufficient to formulate a proper residual function capacity ("RFC") at the initial State agency review phase (Dkt. No. 5, p. 66), the agency sent him for consultive exams on September 17, 2020, with: Janine Ippolito, Psy.D., for a psychiatric evaluation (Dkt. No. 5, pp. 493-497); and Dr. Dave Nikita, MD, for an internal medicine examination. (Dkt. No. 5, pp. 498-503).

Plaintiff's application for SSI was initially denied on October 14, 2020 (Dkt. No. 5, p. 102), and upon reconsideration on February 2, 2021. (Dkt. No. 5, p. 114). Plaintiff requested a hearing before an Administrative Law Judge ("the ALJ"), and on January 24, 2022, Plaintiff and his attorney appeared telephonically before ALJ Stephan Bell and testified (Dkt. No. 5., pp. 37-55), as did a vocational expert.  (Dkt. No. 5., pp. 55-62).  On March 24, 2022, the ALJ rendered a written decision finding that Plaintiff was not disabled under the SSA. (Dkt. No. 5., pp. 19-31).   On April 20, 2023, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Dkt. No. 5., pp. 5-13).

### B. The ALJ's Decision

The ALJ determined, under step one, that Plaintiff had not engaged in substantial gainful activity since May 1, 2020, the date he first sought benefits. (Dkt. No. 5, p.21). Under step two, the ALJ determined that Plaintiff had the following severe impairments: morbid obesity; tarsal tunnel syndrome on the left side; and chronic obstructive pulmonary disease (COPD). (Dkt. No. 5, pp. 21-24).  The ALJ further found that the medical evidence submitted also demonstrated that Plaintiff

had hearing loss in his left ear, as well as the mental impairments of major depressive disorder and alcohol use disorder, but that such hearing and mental impairments were non-severe. (Dkt. No. 5, p. 22). In reaching that conclusion, the ALJ evaluated the Plaintiff's mental impairments using the "special technique" set forth in 20 C.F.R. § 416.920a. (Dkt. No. 5, pp. 22-23). The ALJ concluded that the claimant's medically determinable mental impairments caused no more than a "mild" limitation in any of the functional areas and that there was no evidence of anything more than a minimal limitation in the claimant's ability to do basic work activities. (Dkt. No. 5, p. 23).

At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal one of the impairments listed in 20 C.F.R. 416.920, 416.925 and 416.926. (Dkt. No. 5, p. 24). The ALJ next determined "upon careful consideration of the entire record"—including opinions, reports, and records from: Dr. Saeed (Dkt. No. 5, p. 27); Dr. Stradley (Dkt. No. 5, p. 27); Dr. D'Otona (Dkt. No. 5, p. 27); Dr. Juriga (Dkt. No. 5, p. 27); Dr. Ronald Greco (Plaintiff's treating physician) (Dkt. No. 5, p. 28); Dr. Lee-Kwen Peterkin (Dkt. No. 5, p. 28); PA Howard Smith (Dkt. No. 5, p. 28); Dr. Janine Ippolito (Dkt. No. 5, pp. 28-29); Best Health Behavioral Services (Dkt. No. 5, pp. 28-29); Dr. Nikita Dave (Dkt. No. 5, p. 29), Dr. Peter J. Riznyk (Dkt. No. 5, p. 29); and even Plaintiff himself (Dkt. No. 5, pp. 236-363)—that Plaintiff had the residual function capacity (RFC) to perform sedentary work as defined in 20 CFR 416.967(a) with some limitations. (Dkt. No. 5, p. 25).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a concrete mixing truck driver and dump truck driver. (Dkt. No. 5, p. 30).

At step five, the ALJ determined, based upon the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, that the Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Dkt. No. 5, p. 31). On that basis, the ALJ determined that Plaintiff was "not disabled." (Dkt. No. 5, p. 31).

### C. The Parties' Contentions

In seeking this Court's review of the ALJ's determination, Plaintiff argues the ALJ failed to support her decision with substantial evidence, by failing adequately to address the supportability and consistency factors when evaluating Dr. Ippolito's opinion before rejecting the more restrictive limitations included in it. Plaintiff further argues that the ALJ erred in concluding that his mental impairments were non-severe and in failing to incorporate any mental limitations into the RFC finding. (Dkt. No. 6-1, p. 14). Defendant responds that the ALJ committed no error and that, therefore, the ALJ's decision should be affirmed. (Dkt. Nos. 8 and 8-1).

## II.  LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence

in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

### B. Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision.  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III. ANALYSIS

#### A. The ALJ's Did Not Err in Evaluating the Opinion Evidence of Dr. Ippolito

Plaintiff initially asserts that the ALJ erred in failing adequately to discuss the evidence that was supportive and consistent with Dr. Ippolito's opinion "that the claimant had moderate limitations in making work related decisions, interacting with others, and regulating emotions; mild limitations in sustaining concentration, but no limitations in understanding, remembering, or applying simple and complex instructions" (Dkt. No. 5, p. 28), before rejecting it.  (Dkt. No. 6-1, pp. 14-18). Although Plaintiff concedes that the ALJ discussed the "daily activities that she felt undermined Dr. Ippolito's position," (Dkt. No. 6-1, p. 16), Plaintiff asserts that the ALJ erred in failing to discuss the evidence that supported and was consistent with Dr. Ippolito's opinion, including the opinions of Dr. Ortona and Dr. Juriga. *Id*.

Contrary to Plaintiff's assertion, however, the ALJ was under no obligation to discuss in what ways—if any—Dr. Ippolito's opinion might have favorably compared with the opinions of Dr. Ortona and Dr. Juriga since the ALJ's analysis explicitly and meticulously described why and to what extent she was rejecting the opinions of each. (Dkt. No. 5, p. 27- 28).  This Court also finds that the ALJ did explain how Dr. Ippolito's opinion (Dkt. No. 5, p. 28) regarding Plaintiff's limitations—an opinion which was based upon a one-time examination—conflicted with not only with Plaintiff's own statements (Dkt. No. 5, pp. 236-252), but also with treatment records which spanned a period of nearly three (3) years, from Best Self, Plaintiff's mental

health counselor (Dkt. No. 5, pp. 313-401, and 540-615), and with progress notes covering fifteen (15) months, from Plaintiff's treating physician. (Dkt. No. 5, pp. 626-651).

Specifically, the ALJ, in assessing the extent to which the opinions of the three doctors were supported by and consistent with the other evidence in the case, appropriately considered Plaintiff's own reports of daily activities, together with other evidence before her.  Such evidence included the following: Plaintiff's normal mood and cooperativeness in multiple examinations (Dkt. No. 5, pp. 495, 627, 630, 633, 636, 639, 644); his focused attention and concentration (Dkt. No. 5, p. 393); his coherent and goal directed thought process (Dkt. No. 5, pp. 495, 604-606); his intact memory (Dkt. No. 5, p. 393); his performance on various tests (Dkt. No. 5, pp. 341, 496, 605); his ability to care for himself and his pets (Dkt. No. 5, p. 239-240); his ability to do his own shopping and other tasks (Dkt. No. 5, p. 241); his ability to follow written and spoken instructions (Dkt. No. 5, p. 245); his plans of publishing a children's book (Dkt. No. 5, p. 360); his three decades of service as a volunteer firefighter, which ended in about 2021 because of his breathing problems (Dkt. No. 5, p. 44-45); and his ability to getting along with authority figures (Dkt. No. 5, pp. 244-245).  *See*, Dkt. No. 5, pp. 27-29.

In fact, the ALJ, after reciting her reliance on the foregoing evidence, expressly addressed both consistency and supportability in concluding that Dr. Ippolito's opinion that Plaintiff suffered "moderate limitations were not <u>consistent</u> with

8

the overall evidence" (Dkt. No. 5, p. 28) and that "the overall evidence <u>supports</u> the claimant's mental impairments are non-severe." (Dkt. No. 5, p. 29).

While Plaintiff also faults the ALJ for failing to "acknowledge that Dr. Ippolito's opinion was consistent with the opinions of Dr. D'Ortona and Dr. Juriga" (Dkt. No. 6-1, p. 16), the ALJ, in fact, did closely examine the opinions of state agency consultants Dr. D'Ortona and Dr. Juriga, and cite the evidence which was inconsistent with and failed to support their conclusions. (Dkt. No. 5, pp. 27-28). After considering the relevant factors, the ALJ is not required to explain how she considered each factor. 20 C.F.R. § 416.920c(b)(2). Instead, the ALJ need only explain how she considered the "most important factors" of supportability and consistency, and if a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source. *Id*. The ALJ need only provide a "single analysis," which is precisely what the ALJ did here regarding each medical source. *See*, *Allisa P. v. Commissioner of Social Security*, No. 1:21-CV-556-DB, 2024 WL 278227, at *9 (W.D.N.Y. Jan. 25, 2024). The ALJ "does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Although required to develop the record fully and fairly, an ALJ is not required to discuss each piece of evidence. *Id*. In addition, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

Since Plaintiff's contention that the ALJ did not meaningfully consider the consistency and supportability of Dr. Ippolito's opinions is without basis in the record,

and since "the ALJ expressly considered whether Dr. [Ippolito]'s opinions were supported by her own records and whether they were consistent with the other medical evidence of record[,] [t]he Court finds no basis to disturb the Commissioner's determination." *Kenneth S. v. Comm'r of Soc. Sec.*, No. 6:21-CV-06391 EAW, 2023 WL 1960218, at *4 (W.D.N.Y. Feb. 13, 2023).

### B. The ALJ's Step Two Finding That Plaintiff's Mental Health Impairments Were Not Severe is Supported by Substantial Evidence

Plaintiff next asserts that the ALJ's determination that Plaintiff's major depressive order was non-severe is not supported by substantial evidence. (Doc. No. 6-1, pp. 18-20). Specifically, the ALJ found that the medical evidence submitted demonstrated that although Plaintiff had the mental impairments of major depressive disorder and alcohol use disorder, such mental impairments were non-severe. (Dkt. No. 5, p. 22). The ALJ evaluated the Plaintiff's mental impairments using the "special technique" set forth in 20 C.F.R. § 416.920a and concluded that the claimant's medically determinable mental impairments caused no more than a "mild" limitation in any of the functional areas and that there was no evidence of anything more than a minimal limitation in the claimant's ability to do basic work activities. (Dkt. No. 5, p. 23).

Pursuant to 20 C.F.R. § 416.920(a)(4)(ii), the severity of an individual's impairments is considered at the second step of the five-step sequential evaluation process used by the agency to determine whether a claimant is disabled. Section 416.920a of Title 20 of the Code of Federal Regulations outlines that "special

technique" that the ALJ must employ to evaluate mental impairments. First, the ALJ must assess the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he has a medically determinable mental impairment. 20 C.F.R. § 416.920a(b)(1).

If an impairment is found to exist, then the ALJ must then rate the degree of functional limitation resulting from the impairment(s) in four broad functional areas that a person uses in a work setting, on a scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(b)(2), (c)(4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). The four functional areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3). If the ALJ rates the degrees of limitation as "none" or "mild," then the ALJ will generally conclude that the claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1). On the other hand, the impairment is *per se* disabling if the ALJ finds that it results in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

Here, the Court finds that the ALJ properly performed the special technique analysis and that her conclusion that that Plaintiff's mental impairments were non-severe is supported by substantial evidence.  Specifically, the ALJ found that Plaintiff had no limitation in the areas of understanding, remembering, or applying

11

information, or in interacting with others. (Dkt. No. 5, pp. 22-23). The ALJ did find "mild limitation" in the areas of concentrating, persisting, or maintaining pace, and in adapting or managing himself. (Dkt. No. 5, p. 23).  The ALJ found no more than mild impairment in any of the areas of functioning, and consequently, she concluded that Plaintiff's mental impairments were non-severe. *See* 20 C.F.R. § 416.920a(d)(1).

Despite self-reporting some memory limitations, Plaintiff's mental health therapy sessions which indicated his memory was intact (Dkt. No. 5, p. 393), combined with his performance on memory and spelling tests (Dkt. No. 5, pp. 341, 496, 605), his ability to follow instructions (Dkt. No. 5, p. 245), his testimony at the hearing (Dkt. No. 5, pp. 43-53), and fact that he reported being in the process of writing and publishing a children's book (Dkt. No. 5, p. 360), all support the ALJ's conclusion that Plaintiff does not have any limitations in this area. *See*, Dkt. No. 5, pp. 22-23.

Notwithstanding Plaintiff's assertion that he did not want to interact with others, there is no indication in the record that he was unable to do so, as he was cooperative, had a normal mood, and had no problem with authority.   (Dkt. No. 5, pp. 22-23).  Accordingly, the ALJ did not err in concluding that Plaintiff had no limitation in interacting with others.

With respect to concentrating, persisting, or maintaining pace, the ALJ found that Plaintiff had "mild limitation," based upon his complaints about difficulties with attention and completing tasks, his difficulty performing serial-seven testing, and the assessment of his insight and judgment as "fair" by multiple sources. (Dkt. No. 5, p.

23).  Still, the ALJ found the limitation only mild because Plaintiff could perform serial-three testing and simple calculations, and multiple sources found his thought process coherent and goal-directed. (Dkt. No. 5, p. 23).

Finally, the ALJ found that Plaintiff had "mild limitation" adapting or managing himself.  The ALJ acknowledged Plaintiff's reports of feeling depressed and anxious during his therapy sessions, at his consultative psychiatric exam, and at the hearing, and pointed out that Plaintiff not only suffered from alcohol abuse disorder but had a history of traumatic abuse with recurrent flashbacks. Notwithstanding the foregoing, the ALJ found Plaintiff's limitations in this area to be only mild, as he denied suicidal ideation, did not produce evidence of any psychiatric hospitalization during the relevant period, reported to be working to publish a children's book, and was able to perform such activities of daily living as personal care, shopping for groceries, and counting change. (Dkt. No. 5, p. 23).

That Plaintiff may disagree with the manner in which the ALJ weighed the evidence provides no basis for this Court to disturb the ALJ's conclusion. *Shamara A. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6171-LJV, 2023 WL 9002810, at *3 (W.D.N.Y. Dec. 28, 2023).  Under the substantial evidence standard of review, Plaintiff must show that the ALJ's findings of fact were so inconsistent with the medical record that "a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F. 3d 443, 448 (2d Cir. 2012); *McIntyre v. Colvin*, 758 F. 3d 146, 149 (2d Cir. 2014). Plaintiff has not met that burden. There is objective and subjective evidence in this record which supports the ALJ's conclusion

that Plaintiff's mental health impairments are no more than mild and thus, non-severe. Notwithstanding Plaintiff's disagreement with the ALJ's weighing of the evidence, the deferential standard of review which applies here "prevents [this Court] from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016).

In addition, the ALJ expressly addressed the opinions of Drs. D'Ortona and Juriga (Dkt. No. 5, pp. 27-28) as well as Ippolito (Dkt. No. 5, pp. 28-29) and marshaled the specific evidence supporting her reasoning for finding the opinions of the former to be "not…fully persuasive" and the latter to be "somewhat persuasive." *Id*.  "[T]o the extent that the ALJ did not credit every single aspect of [the doctors'] opinions, the rejected portions were not supported by the medical evidence of record, and her decision rejecting them did not lack substantial evidence." *Burkey v. Colvin*, 284 F. Supp. 3d 420, 425 (W.D.N.Y. 2018).

### C. The ALJ's RFC Assessment Was Proper

Finally, Plaintiff argues that the ALJ erred in failing to include Plaintiff's depression in her RFC assessment.  Notwithstanding such claim, however, the records establishes that the ALJ, as part of her RFC analysis, expressly and extensively discussed Plaintiff's mental impairments and the limitations—or lack thereof—they pose to Plaintiff's ability to work. (Dkt. No. 5, pp. 25-30).  The ALJ specifically analyzed the opinions of Drs. D'Ortona and Juriga, who found that Plaintiff "could perform the basic mental demands of unskilled work," and articulated the specific evidence she relied upon in determining that such conclusion was "not…fully persuasive." (Dkt. No. 5, pp. 27-28). Similarly, the ALJ specifically

14

analyzed the opinion of Dr. Ippolito, who assessed Plaintiff as having "moderate limitations in making work related decisions, interacting with others, and regulating emotions; mild limitations in sustaining concentration, but no limitations in understanding, remembering, or applying simple and complex instructions," and articulated the specific evidence she relied upon in determining that such conclusion was "somewhat persuasive." (Dkt. No. 5, pp. 28-29).

In reaching her RFC assessment, the ALJ appropriately considered Plaintiff's own reports of daily activities, together with a wide variety of evidence before her in the record—including the following: Plaintiff's normal mood and cooperativeness in multiple examinations (Dkt. No. 5, pp. 495, 627, 630, 633, 636, 639, 644); his focused attention and concentration (Dkt. No. 5, p. 393); his coherent and goal directed thought process (Dkt. No. 5, pp. 495, 604-606); his intact memory (Dkt. No. 5, p. 393); his performance on various tests (Dkt. No. 5, pp. 341, 496, 605); his ability to care for himself and his pets (Dkt. No. 5, p. 239-240); his ability to do his own shopping and other tasks (Dkt. No. 5, p. 241); his ability to follow written and spoken instructions (Dkt. No. 5, p. 245); his plans of publishing a children's book (Dkt. No. 5, p. 360); his three decades of service as a volunteer firefighter, which ended in about 2021 because of his breathing problems (Dkt. No. 5, p. 44-45); and his ability to getting along with authority figures (Dkt. No. 5, pp. 244-245). In conjunction with the entire record, the foregoing evidence supports the ALJ's RFC analysis. *See Scouten v. Colvin*, No. 15-CV-76S, 2016 WL 2640350, at *4 (W.D.N.Y. May 10, 2016) ("[t]here is no error where ... an ALJ bases his RFC on plaintiff's own

testimony" together with relevant medical evidence).  Contrary to Plaintiff's argument, moderate mental limitations are not consistent with disabling mental limitations. *Rice v. Comm'r of Soc. Sec.*, No. 18-cv-1369, 2020 WL 4283894, *4 (W.D.N.Y. July 27, 2020) (ALJ accounted for moderate-to-marked limitations appropriately dealing with stress by limiting plaintiff to simple work in a low stress environment involving simple routine decisions, occasional contact with others, and no production-rate pace).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

　　　　　　　　　　　　　　　　　　　_s/Richard J. Arcara_
　　　　　　　　　　　　　　　　　　HONORABLE RICHARD J. ARCARA
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

Dated:  February 8, 2024
        Buffalo, New York